IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0169
════════════
 
Tangie Walters, 
Petitioner,
 
v.
 
Cleveland Regional Medical 
Center, Shirley Kiefer,
and Keith Spooner, M.D., 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
9, 2009
 
 
            
Justice Willett delivered the opinion of 
the Court.
 
            
This is one of two “surgical sponge” cases decided today regarding the 
time limits placed on medical-malpractice suits.[1] The issue here: did Tangie Walters raise a fact issue as to whether she could 
avail herself of the Open Courts provision[2] as an exception to the two-year statute 
of limitations?[3] We answer the same way we did twenty-five 
years ago with regard to the claimant in Neagle v. Nelson: yes.[4] The Texas Constitution grants 
foreign-object claimants a reasonable opportunity to discover their injuries and 
file suit,[5] even if the two-year limitations period 
has run (though not, as in today’s companion case,[6] if the ten-year repose period has 
run). And here, Walters has raised a fact issue as to whether the Open Courts 
provision applies.
            
Sponge cases constitute a unique class of malpractice claims, thus 
meriting unique Open Courts treatment: (1) such injuries are notoriously hard to 
discover; (2) the existence of wrongdoing (and the identity of the wrongdoer) 
are usually undisputed; and (3) an absolute two-year cutoff would render 
superfluous the Legislature’s ten-year statute of repose.
            
Today’s result is consistent not only with Neagle, which held that the Open Courts provision 
barred application of a two-year statute of limitations in a sponge case, but 
also with the later-enacted repose statute, which declares ten years as the 
last-chance deadline for all malpractice cases, including, we hold today, 
foreign-object cases.[7] This outer-boundary deadline would be 
surplusage if the limitations statute were itself a 
no-exceptions cutoff.
            
Accordingly, we reverse the court of appeals’ judgment and return this 
case to the trial court for further proceedings.
 
I. Background
            
In December 1995, Dr. Keith Spooner performed a tubal ligation on Tangie Walters immediately following the birth of a child. 
Dr. Spooner performed the procedure at Cleveland Regional Medical Center with 
the help of Shirley Kiefer, a surgical assistant. The official count of surgical 
items indicated that all sponges were accounted for, but a sponge of the type 
used in the procedure was found inside Walters some nine-and-a-half years 
later.
            
Following the surgery, Walters experienced abdominal cramping. A nurse 
told her the pain was from childbirth and having gas pumped into her abdomen. At 
her follow-up appointments with Dr. Spooner a few weeks after surgery, he told 
her the cramping she continued to experience resulted from uterine contractions 
that accompany nursing. Walters experienced intermittent pain thereafter, which she attributed to a preexisting health problem 
that had troubled her periodically. Her next doctor’s visit, prompted by 
abdominal pain, came in March 1998, approximately twenty-seven months 
after her surgery. From that point on, Walters visited family physicians for a 
litany of ailments: severe fatigue, insomnia, headaches, infections, uterine 
problems, bladder problems, urination issues, cysts, and chronic and increasingly severe pain 
in the area where the sponge was ultimately discovered. For those and 
other problems, Walters received a host of different diagnoses: cystitis, an 
aphthous ulcer, boils, pharyngitis, fatigue, stomatitis, 
cholecystitis, and so on. Her doctors ordered numerous 
tests, including an x-ray, urine tests, and blood tests. The record indicates 
that while Walters endured intermittent pain during the years following her 
operation, especially during menstruation, the pain became progressively worse 
until the sponge was discovered.
            
In April 2005, Walters visited Dr. Mary Garnepudi, a gynecologist. Garnepudi discovered an unusual lump while examining 
Walters. Garnepudi referred Walters to a surgeon, who, 
with the help of a second surgeon, operated on Walters and found the sponge. It 
was lodged against Walters’s small intestine and encapsulated in fibrous tissue, 
suggesting the sponge had been there for years.
            
In August 2005, less than two months after the sponge was discovered, 
Walters sued Cleveland Regional Medical Center, Dr. Spooner, and Shirley Kiefer. 
Walters alleges the sponge was responsible for the near-decade of medical 
problems she experienced since the 1995 tubal ligation. The three defendants moved for summary judgment, 
contending Walters’s claim was barred by section 74.251(a) of the Civil Practice 
and Remedies Code, the two-year statute of limitations for healthcare-liability 
claims. The trial court agreed and granted summary judgment. The court of 
appeals affirmed, holding that Walters had not established that the limitations 
statute violated Open Courts.[8]
II. Analysis
            
Under the Open Courts provision, “[a]ll courts 
shall be open, and every person for an injury done him, in his lands, goods, 
person or reputation, shall have remedy by due course of law.”[9] In Yancy v. United Surgical Partners International, 
Inc., we elaborated on what a claimant must show to establish an Open Courts 
violation:
 
Unlike the 
discovery rule, which defers accrual of a cause of action until the plaintiff 
knew or, exercising reasonable diligence, should have known of the facts giving 
rise to the claim, the open courts provision merely gives litigants a reasonable 
time to discover their injuries and file suit. Because the open courts guarantee 
does not toll limitations, courts must determine what constitutes a reasonable 
time for a claimant to discover her injuries and file suit.[10]
 
In the summary 
judgment context, the burden is on the plaintiff asserting an Open Courts 
exception to the statute of limitations to raise a fact issue demonstrating that 
she did not have a reasonable opportunity to discover the alleged wrong and 
bring suit before the limitations period expired.[11]
            
Following Neagle, our 1985 sponge case 
that upheld an Open Courts challenge to the two-year limitations period, we hold 
that Walters has at least raised a fact issue as to whether she discovered the 
sponge and brought her suit within a reasonable time.
A. Neagle v. 
Nelson
            
Neagle addressed errant sponges and the 
Open Courts guarantee, and nothing dispositive 
distinguishes Neagle from today’s case. 
The two cases share the same procedural posture: the claimant lost on summary 
judgment at the trial court, lost again at the court of appeals, and appealed 
here. They also involve substantially the same statute of limitations.[12] There are other 
similarities: (1) the sponge was discovered after the limitations period had 
expired; and (2) only after someone found a lump and performed exploratory 
surgery.[13]
B. Walters Raised a Fact Issue
            
The court of appeals focused on two facts, namely that (1) Walters 
experienced pain and various ailments immediately after her surgery and for 
years thereafter, well before the sponge was discovered; and (2) she did not see 
a doctor for more than two years after her surgery,[1][4] which may have also been true of the 
claimant in Neagle.[15]
            
We must review the summary judgment record in the light most favorable to 
Walters, indulging reasonable inferences and resolving doubts in her 
favor.[16] Walters raised a genuine issue of 
material fact as to whether she discovered the sponge and brought her suit 
within a reasonable time. Walters did not rebuff providers’ attempts to discover 
her injury (for example, by rejecting efforts to diagnose the cause of her pain 
and various ailments) nor did she unreasonably delay filing suit once the sponge 
was discovered.[17] There is record evidence that Walters 
experienced pain in the years following her surgery, but this evidence does not 
necessarily show that Walters should have discovered the sponge within the 
limitations period. In this case, the pain may have been related to a prior 
condition, and regardless, Walters sought medical help as the pain got worse. 
Moreover, the record indicates that (1) a nurse and Dr. Spooner told Walters her 
abdominal pain was not indicative of a problem with her surgery, but was instead 
caused by gas used to inflate her abdomen during surgery and later by nursing, 
and (2) years later, and in the course of her worsening condition, at least one 
other physician was repeatedly apprised of her complaints of abdominal cramping 
and related symptoms and did not diagnose a foreign object or recommend further 
testing or referral to a specialist. On Walters’s own initiative she eventually 
went to a gynecologist, who referred her to the surgeons who discovered the 
sponge. As we have noted in another sponge case:
 
All of the 
procedures for placing objects in and removing them from the body are in the 
control of the surgeon. It is a virtual certainty that the 
patient has no knowledge on the day following the surgery—nor for a long 
time thereafter—that a foreign object was left in the incision.[18]
 
C. The Singularity of Sponge Cases
            
Sponge cases stand alone in the healthcare-liability context. First, they 
are rare. Second, surgical instruments do not remain inside patients absent 
negligence. Third, errant items like sponges are exceedingly difficult to 
discover.[19] In three of our sponge cases — Neagle, Rankin, and this case — the sponge was 
only discovered after a lump was noticed on the claimant’s body.[20] As a result, foreign-object cases often 
invite res ipsa 
loquitur treatment, and some legislatures 
explicitly exempt such cases from statutes of limitations and repose.[21] Sometimes, these cases are the lone 
exception, while a few states also give special treatment to claims 
involving fraudulent concealment[22] or minors[23] (as in Texas).[24] The Texas limitations statute does not 
explicitly save sponge cases, but, as explained below, the Texas repose statute 
implicitly urges us to.
D. Giving Meaning to the Statute 
of Repose
            
By its terms, the repose statute is a final-is-final deadline for 
medical-malpractice claims: “This subsection is intended as a statute of repose 
so that all claims must be brought within 10 years or they are time 
barred.”[25] Texas, unlike some other states,[2][6] does not expressly exempt foreign-body 
claims from its limitations statute; perhaps lawmakers thought it unnecessary 
given our holding in Neagle. Regardless, Texas 
does have a catch-all repose statute that contemplates it is at least possible 
for certain claims to be brought up to eight years after limitations 
expires.
            
In 2003, eighteen years after Neagle, 
the Legislature took a fresh look at the healthcare-liability landscape and, 
among other things, revisited time limits in malpractice suits.[27] Although lawmakers did not address Neagle, they added a new ten-year repose period, and 
did so even though the limitations period itself seems absolute: 
“Notwithstanding any other law,” actions must be filed within two years.[28]
            
The repose statute, however, indicates that the limitations statute — 
notwithstanding its “[n]otwithstanding any other law” preamble — is not totally 
exception-free. The Legislature in 2003 was attempting a top-to-bottom overhaul 
of the State’s tort system,[29] against a legal backdrop that included 
Neagle, where we held two years can be too 
short for sponge cases. The repose statute appears to be a legislative 
recognition that while two years may be constitutionally too short for some 
claims, ten years may be constitutionally enough for all claims.
            
Put simply, a ten-year repose period has no purpose unless the two-year 
limitations period has exceptions, as for Neagle-like claims. There is no need for repose 
unless there exists a narrow class of claims 
that reach beyond the two-year limitations period.
III. Conclusion
            
Sponge cases are sui generis. They rarely occur, they never occur absent 
negligence, and when they do occur, laypeople are hard-pressed to discover the 
wrong. Our cases recognize this, as do many legislatures, which exempt 
foreign-object claims from limitations and repose periods. Our own Legislature 
imposed a reasonable ten-year repose period on all malpractice claims — 
with no carve-out for sponge cases — a statute we uphold today in Rankin 
against an Open Courts challenge. The Legislature did nothing to alter courts’ 
treatment of late-filed sponge cases following Neagle, where we allowed an Open Courts challenge to 
limitations. Treating the two-year limitations period as absolute in all 
circumstances would render the new statute of repose meaningless. And on this 
record, we are unwilling to conclude that Walters failed to raise a fact issue 
as to whether she discovered the sponge and brought suit within a reasonable 
time.
            
Accordingly, we reverse the court of appeals’ judgment and return this 
case to the trial court for further proceedings.
 
 
 
 
            
            
            
            
            
            
______________________________
            
            
            
            
            
            
Don R. Willett
            
            
            
            
            
            
Justice
 
 
OPINION DELIVERED: March 
12, 2010






[1] 
The companion case, an Open Courts challenge to 
the ten-year statute of repose, is Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin, __ S.W.3d __ (Tex. 
2010).

[2] Tex. Const. 
art. I, § 
13.

[3] Tex. Civ. Prac. & Rem. Code 
§ 74.251(a) (requiring medical-malpractice 
claims to be brought within two years of the date of the tort).

[4] 685 S.W.2d 11, 12 (Tex. 1985).

[5] 
Id.; 
see also Yancy v. United Surgical Partners Int'l, 
Inc., 236 S.W.3d 778, 785 (Tex. 2007); Shah v. Moss, 67 S.W.3d 836, 
842 (Tex. 2001); Morrison v. Chan, 699 S.W.2d 205, 207 (Tex. 1985) 
(quoting Nelson v. Krusen, 678 S.W.2d 918, 923 
(Tex. 1984)).

[6] Rankin, __ 
S.W.3d at __.

[7] Id.; Tex. Civ. Prac. & Rem. Code 
§ 74.251(b) (“A claimant must bring a 
health care liability claim not later than 10 years after the date of the act or 
omission that gives rise to the claim.”).

[8] 264 S.W.3d 154, 159.

[9] Tex. Const. 
art. I, § 
13.

[10] 236 S.W.3d at 784 (internal citations 
omitted).

[11] Shah, 67 
S.W.3d at 846–47.

[12] See Neagle, 685 S.W.2d 
at 12 (quoting statute of limitations).

[13] Id. (“Discovery 
of the sponge occurred . . . more than two years after the appendectomy, when, 
after feeling a mass in his abdomen, [the claimant] submitted to exploratory 
surgery.”).

[14] 264 S.W.3d at 156, 159.

[15] See Neagle, 685 S.W.2d at 12.

[16] Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 756 (Tex. 2007).

[17] “A plaintiff 
may not obtain relief under the open courts provision if he does not use due 
diligence and sue within a reasonable time after learning about the alleged 
wrong.” Yancy, 236 S.W.3d at 785 (emphasis 
omitted) (quoting Shah, 67 S.W.3d at 847).

[18] Gaddis v. 
Smith, 417 S.W.2d 577, 580 (Tex. 1967), 
superseded by statute, Professional Liability Insurance for Physicians, 
Podiatrists, and Hospitals Act of 1975, 64th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865, as stated 
in Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 
1985).

[19] See 
id.

[20] We have 
decided two other sponge cases. In Gaddis, where we created the discovery 
rule, a sponge was discovered after exploratory surgery for what was believed to 
be a tumor but turned out to be a sponge (perhaps because a lump was perceived; 
it is unclear). Id. at 578. In Bradford v. 
Sullivan, 683 S.W.2d 697 (Tex. 1985) (per curiam), 
we reversed a summary judgment in a sponge case that had been granted on 
limitations grounds, but we gave few details about the discovery of the 
sponge.

[21] See, e.g., 
Cal. Civ. Proc. Code § 340.5 
(West 2010) (excepting foreign-object claims from the repose period); Colo. Rev. Stat. § 13-80-102.5(3)(b) (2009) 
(excepting foreign-object claims from the repose period and giving claimant two 
years after discovery to file suit); Mass. Gen. Laws Ann. ch. 260, § 4 (West 2010) (excepting foreign-object claims 
from a seven-year statute of repose); Miss. Code Ann. § 15-1-36(2)(a) (2009) (exempting foreign-object claims from statute of 
limitations and also from seven-year repose limit); Ohio Rev. Code Ann. 
§ 2305.113(D)(2) (LexisNexis 2010) 
(exempting foreign-object claims from repose period); S.C. Code Ann. § 15-3-545(B) (2009) 
(excepting foreign-object claims from repose limit); Tenn. Code Ann. § 29-26-116(a)(4) (2009) (exempting foreign-object claims from repose 
period); Vt. Stat. 
Ann. tit. 12, § 521 
(2009) (exempting foreign-object claims from repose period); Wash. Rev. Code Ann. § 4.16.350 (West 2010) (excepting foreign-object 
cases from the statute of limitations and repose). The 
Texas Legislature has not expressly addressed sponge cases, but Neagle was issued before the current statute of 
repose was enacted.

[22] See, 
e.g., Cal. Civ. Proc. Code § 340.5 (West 
2010) (excepting from the healthcare-liability repose period claims involving 
fraud, intentional concealment, and presence of a foreign body); Colo. Rev. Stat. § 13-80-102.5(3)(a) (2009) (excepting actions that were knowingly concealed 
from the repose period); Miss. Code Ann. 
§ 15-1-36(2)(a)–(b) (2009) (excepting only 
claims where there was fraudulent concealment and foreign-object claims); Tenn. Code Ann. 29-26-116(a)(3)-(4) (2009) (excepting only claims where there was 
fraudulent concealment and foreign-object claims); Vt. Stat. Ann. tit. 12, § 521 (2009) (excepting only claims where there was fraudulent concealment 
and foreign-object claims); Wash. Rev. 
Code Ann. § 4.16.350 (West 2010) (excepting only 
claims involving fraud, intentional concealment, and presence of a foreign 
body); Wis. Stat. Ann. § 
893.55(1m)(2)–(3) (West 2009) (excepting only claims 
where there was fraudulent concealment and foreign-object 
claims).

[23] See, e.g., 40 
Pa. Cons. 
Stat. Ann. § 1303.513(b)–(c) (West 2009) 
(excepting only claims by minors and foreign-object 
claims).

[24] See Tex. Civ. Prac. & Rem. 
Code § 74.251(a) (giving minors under the age 
of twelve years old until their fourteenth birthday to file 
claim).

[25] Tex. Civ. Prac. & Rem. Code § 
74.251(b).

[26] See, 
e.g., supra note 
21.

[27]
See Rankin, ___ 
S.W.3d at ___ (discussing the addition of a repose limit in 
2003).

[28] See Tex. Civ. Prac. & Rem. 
Code § 74.251. It is 
undeniable that the statute of limitations contains no discovery rule. We 
fashioned such a rule in a 1967 sponge case to suspend an earlier limitations 
provision. Gaddis v. Smith, 417 S.W.2d 577, 580 (Tex. 1967). 
The Legislature in 1975 abrogated the court-fashioned discovery rule. See Sax 
v. Votteler, 648 S.W.2d 661, 663 n.1 (Tex. 1983) 
(discussing the Professional Liability Insurance for Physicians, Podiatrists, 
and Hospitals Act of 1975, 64th Leg., R.S., ch. 330, § 
1, 1975 Tex. Gen. Laws 864, 865, which removed the “accrual” language that had 
led the Court to find a discovery rule embedded within the statute). 
Accordingly, in a 1985 case, this Court acknowledged that the Legislature had 
abrogated the discovery rule. Morrison v. Chan, 699 S.W.2d 205, 208 (“[In 
Gaddis, we] held that a cause of action does not accrue until the 
plaintiff knows, or has reason to know, of his injury. In contrast, article 
5.82, section 4 contains no accrual language and thus imposes an absolute 
two-year statute of limitations regardless of when the injury was discovered.”) 
(emphasis omitted) (quoting 
Nelson v. Krusen, 678 S.W.2d 918, 920 (Tex. 
1984)).

[29] See 
Rankin, ___ S.W.3d at 
___.